IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 07-cv-01243-MJW-MEH**

W. MICHAEL RZEPIENNIK,

Plaintiff,

v.

ARCHSTONE-SMITH, INC.,

Defendant.

---

**ORDER ON**
**DEFENDANT ARCHSTONE-SMITH, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**
**(Docket No. 10)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to the undersigned by District Judge Wiley Y. Daniel on December 27, 2007, pursuant to an Order of Reference Pursuant to 28 U.S.C. § 636(c) (Docket No. 29) upon the parties' unanimous consent to disposition of the action by a United States Magistrate Judge. (See Docket No. 30).

Now before the court is Defendant Archstone-Smith, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 10). The court has considered the motion, the response thereto (Docket No. 22), the reply (Docket No. 23), the court-ordered sur-reply (Docket No. 36), and the response thereto (Docket No. 38). In addition, the court has considered applicable Federal Rules of Civil Procedure,

statutes, and case law, as well as the court's file. The court now being fully informed makes the following findings, conclusions of law, and order that the case be dismissed with prejudice.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a

reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

"[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFC Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th cir. 1997). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates." Id.

Here, the court finds that defendant's exhibits A and E to the motion to dismiss and exhibit 2 to the reply[1] are referred to in the plaintiff's Complaint, are central to

---

[1]Exhibit A (Docket No. 10-2) is the plaintiff's administrative complaint. Exhibit E is the August 20, 2003, separation agreement offered to the plaintiff. Plaintiff acknowledges that Exhibits A and E are referenced in the Complaint. (See Docket No. 22 at 5).

The attachment to Exhibit 2 of the reply is the defendant's Development Incentive Plan. Plaintiff refers to that plan, in connection with the bonus that was part of the settlement agreement offer, at least five times in the Complaint (Docket No. 1 at ¶¶ 1, 44, 45, 55, and 57). In the court-ordered sur-reply, plaintiff admits that he has no basis upon which to challenge the authenticity of that exhibit. (Docket No. 36 at 1).

plaintiff's claim, and are indisputably authentic copies, and thus they can be and have been considered in ruling on the instant motion to dismiss without converting the motion to one for summary judgment.

The court finds that the plaintiff's two claims are time-barred. Plaintiff's first claim is pursuant to the employee protection provisions of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A. The parties agree that for such a claim to be timely, it must be filed with the Occupational Safety & Health Administration ("OSHA") "not later than 90 days after the date on which the violation occurs." 18 U.S.C. § 1514A(b)(2)(D). The parties, however, disagree as to when the 90-day filing period began to run.

Plaintiff was terminated from his position with defendant in August 2002. The following year, on August 20, 2003, defendant made a written settlement offer to plaintiff. (Def.'s Ex. E; Docket No. 10-6). Included in that offer was a Bonus as follows:

> 1. **Bonus.** Even though you were not employed on the date bonuses for the Columbia Town Center Project were paid and therefore under the rules of the bonus program are not eligible for a bonus on this project, if you sign this Agreement and it becomes fully effective, in appreciation of your efforts on behalf of the Company it is willing to provide you a 2002 Development Incentive Bonus in the amount of Two Hundred Fifty-Five Thousand Five Hundred Eighty-Nine Dollars ($255,589), less applicable deductions and withholdings. Provided that you have complied with Section 5 of this Agreement, this amount will be paid in a lump sum within ten (10) days of the Effective Date of this Agreement.

(Docket No. 10-6 at 2, ¶ 1). According to that offer, as required by the ADEA, plaintiff had twenty-one (21) days to consider the agreement, although he could choose to execute it earlier. (Docket No. 10-6 at 4).

In the Complaint, plaintiff claims that the letter gave him "21 days, i.e. until

September 14, 2003, from his receipt of the letter to accept" (Docket No. 1 at 20, ¶ 46) In plaintiff's opposition to the motion to dismiss, however, plaintiff refers to the "**Sept. 10, 2003** expiration of Defendant's Aug. 20, 2003 offer . . . ." (Docket No. 22 at 6.) (emphasis added). According to the Complaint, on September 12, 2003, plaintiff met with defendant's counsel to discuss the "conditions and letter offer and to negotiate the terms," but counsel informed plaintiff that defendant would adhere only to the terms and conditions that were in the offer. (Docket No. 1 at 20, ¶ 46).

The alleged SOX violation is the defendant's failure to pay the plaintiff the Development Incentive Plan Bonus for 2002 (in the amount of $255,589.00). That was the amount offered to the plaintiff in the August 20, 2003, written settlement offer. (Docket No. 10-6 at 2, ¶ 1).

In the Complaint, plaintiff avers that "[w]ithin 90 days of the expiration of Reif's offer and conditions, Plaintiff filed this action by letter with [OSHA] . . .." (Docket No. 1 at 22, ¶ 53). The Complaint, however, does not allege a date on which plaintiff mailed or otherwise delivered his administrative complaint to OSHA. The Complaint alleges that OSHA marked the complaint as received on December 15, 2003. (Docket No. 1 at 22, ¶ 53). There are, however, two date stamps on that document. One is a "received" stamp dated December 15, 2003, which does not indicate where the document was received or who stamped it. The other is stamped "U.S. DEPT. OF LABOR-OSHA REGIONAL OFFICE 03 DEC 24 AM 11:35 PHILADELPHIA P.A." (Docket No. 10-2). This court finds that even using the earlier date of receipt, the SOX claim was not timely filed .

The court agrees with the defendant that the 90-day filing period begins when the employee is told of the allegedly adverse action, not when it becomes effective. The OSHA regulations provide as follows with respect to the time for filing of a discrimination complaint:

> Within 90 days after an alleged violation of the Act occurs (i.e., **when the discriminatory decision has been both made and communicated to the complainant**), an employee who believes that he or she has been discriminated against in violation of the Act may file, or have filed by an person on the employee's behalf, a complaint alleging such discrimination. The date of postmark, facsimile transmittal, or e-mail communication will be considered to be the date of filing; if the complaint is filed in person, by hand-delivery or other means, the complaint is filed upon receipt.

29 C.F.R. § 1980.103(d) (emphasis added). See Delaware State College v. Ricks, 449 U.S. 250 (1980) (Title VII action) (The alleged discrimination occurred, and the filing limitations period commenced, at the time the employer's decision was made and communicated to the plaintiff even though one of the effects of the decision did not occur until later.); McClendon v. Hewlett-Packard Co., 2005 WL 1421395, at *3 (D. Idaho June 9, 2005) ("The Sarbanes-Oxley 90-day filing period begins to run when the employer makes and reasonably communicates the discriminatory adverse employment decision to the employee. . . . This is true even if the employee does not experience its effects until a later date.").

Furthermore, based upon the case law cited by defendant (see Docket No. 10 at 5), the court also agrees with defendant that neither the fact that the bonus offer remained open for twenty-one days, nor the plaintiff's attempt to negotiate the terms, transform the offer into something less than "final, definitive and unequivocal" as of the

date it was made. This was not a case, such as those cited by plaintiff (see, e.g., Docket No. 22 at 8, 11-14), in which there was an on-going settlement process with a discussion over the precise contours and effective date of the adverse action or in which the employment action and consequences are not easy to identify. The court agrees with defendant that to the extent the proposed settlement was actionable, it was actionable and discrete at the time the offer was made.

In addition, the court finds no merit to plaintiff's argument that the offer contains legalistic terms not readily understandable by a layman and thus does not constitute the kind of final, definitive, and unequivocal notice to the employee required by the courts. In this case, clear notice was given that the offered bonus would not be paid absent plaintiff's agreement to the terms set forth. The employment action and the consequences were easy to identify. The result, albeit delayed, was an inevitable consequence of plaintiff's failure to sign the agreement.

Furthermore, the court does not agree with plaintiff that it would contravene Colorado law and the ADEA to count the 21-day statutory consideration period against the 90-day SOX filing period. As noted by defendants, the 21-day consideration period is waivable. See 29 C.F.R. § 1625.22(e)(6). In addition, plaintiff's discussion of other limitations periods, that are as short as 30 days, is irrelevant and misleading because the limitations period here is 90 days. The filing period here did not "commence to run so soon that it [became] difficult for a layman to invoke the protection" Congress provided. Delaware State College v. Ricks, 449 U.S. at 262 & n.16.

Therefore, the alleged discriminatory act occurred upon plaintiff's receipt of the

August 20, 2003, offer, and the filing limitations began to run from the time it was received. The Complaint does not contain any allegation as to method or the date on which the plaintiff transmitted his administrative complaint to OSHA. Instead, plaintiff merely alleges that he filed it within 90 days of the expiration of the settlement agreement offer.[2] Plaintiff does, however, assert in a heading in his opposition to the motion to dismiss that "THE ADMINISTRATIVE SOX COMPLAINT WAS TIMELY MAILED AND THEREFORE TIMELY FILED WITH THE DOL." (Docket No. 22 at 6) (emphasis added by underscore). In any event, ninety days from August 20, 2003, is November 18, 2003, which is almost an entire month before the first date (December 15, 2003) that was stamped "received" on the administrative complaint.

In her opposition to the instant motion, plaintiff contends that "[w]here OSHA has not retained or memorialized the date of a postmarked complaint, the postmark can be computed where OSHA records or other evidence indicates the date upon which the complaint was received by OSHA. The presumptive process is to subtract 5 days from the date of receipt." (Docket No. 22 at 7 & n.6) (citing 29 C.F.R. Part 18.4). Even assuming, without deciding, that the presumptive process with SOX claims is, in fact, to subtract 5 days from the date of receipt, plaintiff did not timely file his administrative claim.[3] There are 117 days between the August 20, 2003, date of the offer and the first

---

[2]See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations [however] without supporting factual averments are insufficient to state a claim upon which relief can be based.").

[3]Even allowing four days for delivery of the offer to the plaintiff (albeit on a Sunday - August 24, 2003) (this calculation is based upon plaintiff's averment in the Complaint that 21 days from receipt was September 14, 2003), plaintiff's filing was

"received" date stamp of December 15, 2003.

Finally, the court also finds that the plaintiff's breach of contract claim is barred by the statute of limitations and thus will be dismissed as a matter of law. The Development Incentive Plan, repeatedly referred to in the Complaint, explicitly states that "[t]he laws of the state of Maryland, without regard to the conflict of law provisions of any state, shall govern all matters relating to this Development Incentive Plan except to the extent superseded by the Law of the United States." (Docket No. 23-3 at 6, ¶ 11). Defendant notes that Colorado has adopted the Restatement (Second) approach for conflicts in contract actions, which allows the parties to select which state's law will govern a dispute. See Becker v. Marketing & Research Consultants, Inc., 526 F. Supp. 166, 170 (D. Colo. 1981). "Under Maryland Law, a civil action 'shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.'" Butler v. VisionAIR, Inc., 385 F. Supp.2d 549, 553 (D. Md. 2005) (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-101). Analysis under § 5-101

> has been subject to the "discovery rule," which states that "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." . . . In contract cases, the statute of limitations generally "begins to run from the date of the breach, for it is then that the cause of action accrues and becomes enforc[ea]ble."

Id. (citations omitted). Defendant asserts that under the terms of the Development Incentive Plan, any bonus allegedly owed to Plaintiff was payable no later than February 15, 2003, which was the payout date, and thus that is the latest date on which

---

untimely.

the limitations period began to run. Therefore, defendant asserts, the statute of limitations expired no later than February 15, 2006, but plaintiff did not file his Complaint until June 13, 2007, almost 16 months after the expiration of the limitations period. Defendant further asserts that even assuming the period did not begin to run until the date plaintiff discovered the alleged breach of contract (on August 20, 2003, the date of the settlement offer), plaintiff's claim is still outside of the three-year statute of limitations. This court agrees with defendant that with either accrual date, plaintiff's contract claim is time-barred.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Defendant Archstone-Smith, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 10) is GRANTED, the Complaint is DISMISSED WITH PREJUDICE with costs awarded defendant, and Judgment to enter accordingly.

Date: March 12, 2008
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge